UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES, | CASE NO. C20-1837 MJP |
| Plaintiff, | ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| WILLIAM J. WIDMER, | |
| Defendant. | |

This matter is before the Court on cross-motions for summary judgment.  (Dkt. Nos. 13, 17.)  Having considered the motions and supporting documents, (Dkt. Nos. 13–21), and the relevant record, and after oral argument, the Court DENIES Defendant's motion, (Dkt. No. 13), and GRANTS the United States' motion, (Dkt. No. 17).

**Background**

The United States brought this action on behalf of a federal banking regulator, the Office of the Comptroller of the Currency (OCC), to enforce a 2014 consent order requiring Defendant William J. Widmer to pay $1.464 million in restitution to Hometown National Bank.  The

1  consent order was the result of an investigation by OCC into Defendant, who was a shareholder

2  of the Bank and chairman of the board.  (Compl., Ex. 1 at 3.)  OCC found that Defendant made

3  misrepresentations to OCC in the change-of-control notice he filed when he invested in the

4  Bank; operated a mortgage loan-production office as a branch of the Bank without authorization;

5  made misrepresentations to the Bank's board; ignored regulatory warnings; and made other false

6  statements to regulators.  (Id. at 3–4.)  Defendant's loan-production operation caused losses to

7  the Bank of $1.464 million, according to OCC.

8       As a result of its investigation, OCC determined that Defendant

9       engaged in unsafe or unsound practices, a violation of law, and breaches of
        fiduciary duty to the Bank; caused financial loss to the Bank and received a

10      benefit; and demonstrated personal dishonesty, a willful and continuing disregard
        for the safety and soundness of the Bank, and a reckless disregard for the law.

11
   (Id. at 4.)  OCC served Defendant with a notice that it intended to initiate cease-or-desist

12 proceedings against him under 12 U.S.C. § 1818(b) and (e).  Without admitting or denying

13 OCC's findings, Defendant entered into the consent order in October 2014.  The order prohibits

14 him from working in the banking industry and required him to immediately pay restitution to the

15 Bank for the losses he allegedly caused.  (Id. at 5–6.)  He also waived any right to contest the

16 validity of the consent order.  (Id. at 7.)

17      Defendant never paid the restitution.  OCC closed the Bank the next year, in 2015, and

18 the Federal Deposit Insurance Corporation was named receiver.  (Declaration of Andrew

19 DeCarlow, Ex. E, Dkt. No. 14.)  Another bank acquired all deposit accounts.  (Id.)  FDIC paid

20 the acquiring bank $487,194 and assumed liability for claims totaling $994,671, because the

21 Bank's assets were insufficient to cover insured deposits.  (Declaration of Robert Ferrer ¶¶ 4–6,

22 Dkt. No. 18.)  In its capacity as receiver, referred to as FDIC-R, FDIC transferred any remaining

23

24

1   assets of the Bank and specified liabilities to its corporate capacity, known as FDIC-C.  (Id. ¶ 7.)

2   That agreement included any rights to restitution:

3       The Receiver hereby designates [FDIC-C] as the appropriate recipient of any
        restitution ordered . . . in favor of the Receiver as part of any civil, criminal or
4       administrative proceedings.

5   (Id., Ex B at 3.)  In 2017, Hometown National Bank ceased to exist as a legal entity.  (DeCarlow

6   Decl., Ex. G.)

7                                       **Discussion**

8       The issue before the Court is whether this action to enforce OCC's order of restitution is

9   time-barred.  In general, "an action, suit or proceeding for the enforcement of any civil fine,

10  penalty, or forfeiture, pecuniary or otherwise," must be commenced within five years from the

11  date the claim first accrued.  28 U.S.C. § 2462.  Defendant's theory turns on whether his

12  restitution obligation is now a "penalty."  He contends this is so because the Bank no longer

13  exists—it entered receivership in 2015—and payment would go to FDIC, which succeeded to the

14  Bank's assets and liabilities.  These facts, he says, drain the restitution order of its compensatory

15  character.  The Court rejects this argument.

16      Applying the Supreme Court's decision in Kokesh v. S.E.C., 137 S. Ct. 1635 (2017),

17  which held that a Securities and Exchange Commission order of disgorgement is a penalty and

18  that Section 2462 therefore applies, the Court finds that the restitution order here is not a penalty.

19  The restitution order is a remedy for harm to a private entity (the Bank), not a sanction for a

20  general banking violation.  And its purpose was to compensate the Bank for losses attributed to

21  Defendant's allegedly unlawful conduct, not to punish Defendant or deter others.  Defendant's

22  obligation to pay such compensation does not become a penalty simply because FDIC now holds

23  the right to receive it.

24

1  **A.      Standard of Review**

2      The Court will grant a motion for summary judgment "if the movant shows that there is

3  no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

4  law." Fed. R. Civ. P. 56(a).  The Court views the evidence in the light most favorable to the

5  nonmoving party. Davis v. United States, 854 F.3d 594, 598 (9th Cir. 2017).  If the moving

6  party meets its burden, the nonmoving party must show there is a genuine dispute over material

7  facts to defeat summary judgment.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

8  574, 586 (1986).  If the nonmoving party bears the burden of proof at trial, the moving party is

9  entitled to summary judgment if it shows there is an absence of evidence to support the

10  nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The material facts

11  are undisputed, so the issue presented is appropriate for summary judgment.

12  **B.      Statutory Scheme**

13      The Federal Deposit Insurance Act, 12 U.S.C. § 1811, et seq. authorizes federal banking

14  authorities to commence proceedings against federally insured banking institutions and affiliated

15  individuals for unsound banking practices and violations of federal banking laws.  There are a

16  wide range of sanctions and remedies available under the Act, including restitution.  A federal

17  banking authority may order a party to:

18      (A) make restitution or provide reimbursement, indemnification, or guarantee
        against loss if—

19
        (i) such depository institution or such party was unjustly enriched in
20      connection with such violation or practice; or

21      (ii) the violation or practice involved a reckless disregard for the law or
        any applicable regulations or prior order of the appropriate Federal
22      banking agency. . . .

23  12 U.S.C. § 1818(b)(6)(A).  The Act also provides for civil penalties. Id. at § 1818(i)(2).

24

1   The Act does not include a statute of limitations for actions brought under Section 1818.

2   See Simpson v. Off. of Thrift Supervision, 29 F.3d 1418, 1425 (9th Cir. 1994).  However,

3   Congress has set a generally applicable five-year statute of limitations that applies to actions for

4   fines, penalties, and other forfeitures:

5
        Except as otherwise provided by Act of Congress, an action, suit or proceeding
        for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or
6       otherwise, shall not be entertained unless commenced within five years from the
        date when the claim first accrued if, within the same period, the offender or the
7       property is found within the United States in order that proper service may be
        made thereon.
8
    28 U.S.C. § 2462.  The Parties agree that OCC's claim accrued when the consent order was
9
    signed, on October 27, 2014.  OCC filed the complaint in this case on December 23, 2020, more
10
    than five years later.
11
                **C.      Enforcement of the Restitution Order Is Not Time-Barred**
12
           Relying on the Supreme Court's decision in Kokesh v. S.E.C., Defendant contends that
13
    enforcing the order of restitution would amount to a penalty because Hometown National Bank
14
    no longer exists.  Before discussing how Kokesh applies here, the Court first addresses OCC's
15
    argument that the Ninth Circuit's decision in Simpson answers the question at hand.  The Court
16
    concludes that Simpson does not squarely address Defendant's argument and that the analysis
17
    under Kokesh is necessary to resolving his statute of limitations defense.
18
           In Simpson, the Ninth Circuit held that no statute of limitations applies to an action for
19
    restitution under 12 U.S.C. § 1818 brought by the Office of Thrift Supervision.  29 F.3d 1418,
20
    1425 (9th Cir. 1994).  However, Simpson did not consider whether the restitution at issue there
21
    was a "penalty" or whether 28 U.S.C. § 2462 applied.  The Ninth Circuit has since recognized
22
    that Section 2462 applies to FDIC enforcement actions brought under 12 U.S.C. § 1818 to the
23
    extent that any sanction rises to the level of a penalty.  De la Fuente v. F.D.I.C., 332 F.3d 1208,
24

1   1219 (9th Cir. 2003).  In De la Fuente, it was undisputed that FDIC sought a penalty: removing

2   Mr. de la Fuente from a bank's board and permanently barring him from working in the banking

3   industry.  Id.; see 12 U.S.C. § 1818(e).  The Ninth Circuit distinguished Simpson because

4   Section 2462 was not before the Court in that case.  De la Fuente, 332 F.3d at 1219.  The D.C.

5   Circuit has also held that Section 2462 applies to actions by FDIC and OCC.  Proffitt v. F.D.I.C.,

6   200 F.3d 855, 862–64 (D.C. Cir. 2000) (five-year statute of limitations applies to all actions

7   seeking a penalty); Blanton v. Off. of the Comptroller of the Currency, 909 F.3d 1162, 1171

8   (D.C. Cir. 2018).  In short, Simpson establishes that there is generally no statute of limitations

9   for an action to enforce restitution under 12 U.S.C. § 1818.  29 F.3d at 1425.  But because

10  Simpson does not provide guidance on deciding whether an order of restitution can be a penalty,

11  the Court must apply the analysis under Kokesh.

12        In Kokesh, the Court held that an order of disgorgement—a form of restitution—was a

13  "penalty" and therefore subject to the statute of limitations under Section 2462. 137 S. Ct. 1635

14  (2017).  The Court defined "penalty" as "'punishment, whether corporal or pecuniary, imposed

15  and enforced by the State, for a crime or offen[s]e against its laws.'"  Id. at 1642 (quoting

16  Huntington v. Attrill, 146 U.S. 657, 667 (1892)).  The Court laid out two principles underlying

17  that definition.  First, a sanction is a penalty if it is imposed to redress a wrong against the public,

18  rather than an individual.  Id.  Second, it is a penalty if its purpose is to punish and deter others,

19  "as opposed to compensating a victim for his loss."  Id.  The Court analyzes the how these two

20  principles apply to the order of restitution here.

21              *1.       The restitution order is a remedy for a private harm.*

22        The first characteristic of a penalty is that it is a remedy for harm committed against the

23  public, rather than an individual.  Kokesh, 137 S. Ct. at 1642.  In Kokesh, the Court held that

24

1   SEC disgorgement met this principle of punishment because it was imposed as a consequence for

2   violating securities laws to remedy harm to the public at large, independent of individual investor

3   claims, and was designed to safeguard the integrity of the markets.  Id. at 1643.  In contrast,

4   when a federal agency "charged with regulating railroads ordered a railroad company to refund

5   and pay damages to a shipping company for excessive shipping rates," the Court found the order

6   was not a penalty because it was designed to redress the shipping company's private injury.  Id.

7   at 1642–43 (citing Meeker v. Lehigh Valley R. Co., 236 U.S. 412, 421–422 (1915)).  In both

8   instances, a federal agency charged with regulating and enforcing laws for a sector of the

9   economy imposed a sanction for legal violations.  The SEC's disgorgement order was a penalty

10   because it was not a remedy for harms to a specific private party.  The order requiring the

11   railroad company to pay damages was not a penalty because it was a remedy for harm to another

12   company.

13        This comparison illustrates why the restitiution order here was designed to redress private

14   harm, not a public one.  OCC determined Defendant's unlawful operation of the loan production

15   office caused losses to the Bank totaling $1.464 million.  (Compl., Ex. 1 at 5.)  The restitution

16   order was plainly a remedy for that loss because it required Defendant to compensate the Bank

17   for that amount in full.  The consent order did not go beyond the Bank's loss and did not include

18   civil penalties for violations which are available under other provisions of the FDIC Act.  See 12

19   U.S.C. § 1818(i)(2).  The restitution order is authorized by the FDIC Act, which permits a

20   federal banking authority to order a party to "take affirmative action to correct or remedy any

21   conditions resulting from" banking violations or unlawful banking practices.  12 U.S.C.

22   § 1818(b)(6).  By requiring the remedy to correct specific conditions, the Act ties restitution to

23   individual harms.  Nothing about the restitution order indicates it was a remedy to protect the

24

1    banking industry or the public at large.  In this way, the restitution order contrasts with the

2    provision in the consent order prohibiting Defendant from working in the banking industry,

3    (Compl., Ex 1 at 5), which the Ninth Circuit has recognized as a penalty.  De la Fuente v.

4    F.D.I.C., 332 F.3d 1208, 1219 (9th Cir. 2003).

5           Indeed, Defendant concedes the order of restitution was not a penalty at the time he

6    agreed to pay it.  (Dkt. No. 13 at 11.)  "But," he contends, "these original intentions are now

7    irrelevant."  (Id. at 12)  Defendant argues that the restitution order can no longer remedy private

8    harm because Hometown National Bank no longer exists, so no payment will go to the Bank or

9    its shareholders for redress.  Instead, any money will go to FDIC.  He emphasizes the public-

10   facing and law-enforcement roles of OCC, FDIC, and the cease-and-desist proceeding, and

11   OCC's admission that restitution will not be paid to any private individuals or entities.

12   (DeCarlow Decl. at 33.)

13          Defendant paints with a broad brush.  While the mechanism of a cease-and-desist

14   proceeding may generally be designed to protect the banking system, that does not negate the

15   fact that it can also provide redress for specific harms to private entities, as is the case here.

16   Defendant frames the authority to order restitution as a narrow carveout in a law designed to

17   enforce banking regulation on behalf of the general public.  But he does not dispute that

18   restitution to a private party is built into the Act and is the basis for the restitution order here.  On

19   this point, Defendant's consession that the restitution order was compensatory when it was made

20   is significant.  He admits that the harm underlying the sanction—the Bank's losses—is a private

21   one, not one against the public.  Whether the Bank or another entity ultimately collects the

22   restitution does not change the character of the violation the restitution was designed to redress.

23

24

2.      *The purpose of the restitution order is to compensate, not punish or deter.*

Even if Defendant were correct that enforcing restitution would only remedy a public

harm, rather than a private one, he would still have to show that it meets the second characteristic

of a penalty.  United States v. Phattey, 943 F.3d 1277, 1282 (9th Cir. 2019) (both principles must

be met under Kokesh).  That is, a sanction is a penalty if its purpose is to punish the wrongdoer

or deter others from following suit, "as opposed to compensating a victim for his loss."  Kokesh

v. S.E.C., 137 S. Ct. 1635, 1642 (2017).

In Kokesh, the Supreme Court held that disgorgement imposed by the SEC met the

second characteristic of a penalty because "the primary purpose of disgorgement orders is to

deter violations of the securities laws by depriving violators of their ill-gotten gains."  Id. at 1643

(internal quotation marks omitted).  The Court noted, "in many cases, SEC disgorgement is not

compensatory" at all because disgorged profits are paid to the district court and distributed

according to its discretion.  Id. at 1644.  The Court recognized that disgorgement may be

compensatory in some cases, but emphasized that sanctions may serve multiple purposes.

Ultimately, if a civil sanction "cannot fairly be said solely to serve a remedial purpose, but rather

can only be explained as also serving either retributive or deterrent purposes," it is punishment.

Id. at 1645 (emphasis in original; internal quotation marks and citation omitted).

As with the first factor, regarding public or private harm, Defendant concedes that the

restitution order was nonpunitive at the time he entered into the consent order because it was

designed to compensate Hometown National Bank for the losses he allegedly caused.  But there

are other aspects of the consent order that underscore this nonpunitive character.  For example,

Defendant was not required to admit to any wrongdoing or even to the allegations OCC made in

its findings.  (Compl., Ex. 1 at 1.)  Compare with Kokesh, where the Court noted that "penalties

1   in the context of § 2462 go beyond compensation, are intended to punish, and label defendants

2   wrongdoers." <u>Kokesh</u>, 137 S. Ct. at 1643 (cleaned up).  The restitution order does not label

3   Defendant a "wrongder."  In addition, the amount of the restitution, $1.464 million, was based on

4   Hometown National Bank's losses—not ill-gotten gains by Defendant.  The disgorgement

5   judgment of $34.9 million in <u>Kokesh</u>, in contrast, was calculated by the amount of

6   misappropriated funds.  <u>Id.</u> at 1641.

7        Nevertheless, Defendant argues that enforcing the order now can only serve a punitive

8   purpose because no compensation will actually be paid to Hometown National Bank or its

9   shareholders.  Rather, any payment would go to FDIC's Deposit Insurance Fund.  In his view,

10  the restitution order ceased to be compensatory once the Bank closed because it will never reach

11  the original victim.

12       The chief problem with Defendant's argument is that FDIC, as receiver, succeeded by

13  statute to "all rights, titles, powers, and privileges" of the Bank.  12 U.S.C. § 1821(d)(2)(A).  The

14  right to restitution under this consent order is one such right that FDIC-C acquired from FDIC-R.

15  (Ferrer Decl., Ex. B at 3.)  As a result, FDIC would collect the $1.464 million not because it is

16  charged with enforcing banking laws but because it has the right to receive it as successor to the

17  Bank.  It does not matter that the Bank will not receive restitution.  The original purpose of the

18  restitution order remains, and the right to receive it has simply been transferred.

19       Defendant cites no cases holding that restitution ceases to be such when it is assigned to

20  someone other than the original victim.  But the law recognizes the assignment of rights in

21  various contexts—without prejudice to those rights.  For example, one federal court has rejected

22  a debtor's argument that her obligation to pay restitution should be discharged because the right

23  to restitution had been assigned.  <u>In re Bryer</u>, 227 B.R. 201 (Bankr. D. Me. 1998).  The court

24

1 | found dischargeability depends on "the nature of the debt, not the identity of the holder of the

2 | restitution claim." Id. at 203. Crime victims entitled to restitution may assign their rights

3 | without affecting the defendant's restitution liability. See United States v. Hankins, 858 F.3d

4 | 1273, 1279 (9th Cir. 2017); United States v. Turner, 312 F.3d 1137, 1144 (9th Cir. 2002)

5 | ("Turner is subject to the full amount of restitution. . . . The banks' sale of their restitution asset

6 | is the banks' business."). Another analogous area is under state law, when an insured tortfeasor

7 | assigns first-party rights to any bad-faith claim against the insurer to the injured victim, who

8 | agrees not to execute against the insured. Such an arrangement does not affect the underlying

9 | claims—the tortfeasor is not released from liability. Rather, "it is simply an agreement to seek

10 | recovery only from a specific asset—the proceeds of the insurance policy and the rights owed by

11 | the insurer to the insured." Besel v. Viking Ins. Co. of Wisconsin, 146 Wash. 2d 730, 737

12 | (2002). These cases persuasively illustrate the simple point that courts are reluctant to define a

13 | claim differently based on the identity of the party asserting it.

14 |         In addition, by focusing on the effects of enforcement, rather than the purpose animating

15 | the restitution order, Defendant's argument is akin to one the Ninth Circuit rejected when it held

16 | that denaturalization is not a penalty. In United States v. Phattey, the defendant argued that

17 | denaturalization was punitive because its threat would deter noncitizens from making fraudulent

18 | representations in naturalization proceedings. 943 F.3d 1277, 1283 (9th Cir. 2019). The Court

19 | explained that Kokesh focused on the purpose of a sanction, not its effects: "The incidental effect

20 | of a sanction is irrelevant." Id. The purpose of denaturalization in Phattey was to "revoke a

21 | wrongfully obtained benefit, rather than deterrence." Id. Similarly, Defendant focuses on an

22 | unintended consequence of enforcing restitution after the closure of the Bank—restitution will

23 | now be paid to the Bank's successor. But, as in Phattey, that fact does not change the original

24 |

1   character of the sanction itself, which was to provide redress to the Bank for losses Defendant

2   caused.

3         Finally, the fact that it is a government entity seeking or collecting payment of some kind

4   does not, by itself, make a claim or proceeding punitive in nature.  Courts have consistently

5   found actions by government entities for repayment to be nonpunitive, even if they involved

6   violations of public laws and repayment to the government.  For example, the Supreme Court has

7   emphasized that enforcing an obligation to repay misused federal funding is not penal:

8         Although recovery of misused . . . funds clearly is intended to promote
          compliance with the requirements of the grant program, a demand for repayment
9         is more in the nature of an effort to collect upon a debt than a penal sanction.

10  Bennett v. Kentucky Dep't of Educ., 470 U.S. 656, 662–63 (1985).  Similarly, the Tenth Circuit,

11  applying Kokesh, held that an action by the Federal Communications Commission seeking

12  compensation for overpayment also did not impose a penalty.  Blanca Telephone v. F.C.C., 991

13  F.3d 1097, 1113 (10th Cir. 2021).  These cases show that a federal agency can enforce a

14  repayment obligation without turning that obligation into a penalty because the purpose is not to

15  punish or deter, but to collect.  In this light, the Court finds a lack of support for Defendant's

16  argument that the compensatory purpose of the restitution order here—which he does not dispute

17  existed when he agreed to pay it—now only serves to punish or deter just because a government

18  entity seeks to enforce it.

19                                    **Conclusion**

20        In sum, Defendant has not shown that his obligation to pay restitution has become a

21  penalty because of the closure of Hometown National Bank.  Applying the analysis in Kokesh v.

22  S.E.C., the restitution order remedies a private harm, not violations of public laws.  Its purpose is

23  not to punish or deter, but to compensate the Bank for losses allegedly caused by Defendant.  As

24  the successor to the Bank, FDIC is fully entitled to enforce restitution here.  The statute of

1    limitations under 28 U.S.C. § 2462 does not apply and the Court finds there is no other

2    applicable statute of limitations.  Simpson v. Off. of Thrift Supervision, 29 F.3d 1418, 1425 (9th

3    Cir. 1994).  Therefore, the Court DENIES Defendant's motion for summary judgment and

4    GRANTS the United States' cross-motion for summary judgment.  The Court ORDERS

5    Defendant to pay $1,464,000 in restitution to FDIC within 30 days, plus postjudgment interest at

6    a rate prescribed by 28 U.S.C. § 1961, pursuant to payment instructions to be provided by the

7    United States Attorney's Office.

8            The clerk is ordered to enter judgment in favor of the United States and to provide copies

9    of this order to all counsel.

10           Dated April 8, 2022.

11           _____

12                                               Marsha J. Pechman
                                                 United States Senior District Judge

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 13